# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEFF FOSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 05C 6992 |
| vs. | ) |
| | ) Judge Zagel |
| NATIONAL CITY BANK, | ) |
| | ) Magistrate Judge Cole |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

On January 8, 2007, I conducted a settlement conference with Mr. Foster, his counsel, and counsel for National City Bank. After extensive negotiations, in which Mr. Foster actively participated, a settlement of the case was finally reached. The terms of that settlement were memorialized in a 3-½ page, detailed, written document, which was signed by Mr. Foster and his lawyer, as well as counsel for the Bank. *See* Exhibit A.[1] It contained all the material terms of the parties' agreement including: payment amounts and terms, how the payment was to be treated for tax purposes, whether the parties were releasing each other or entering into a covenant not to sue, the nature of the release or covenant, whether the agreement was to be confidential, and if so, what could be said about the litigation and to whom, whether there were to be liquidated damages in the event of a breach, whether the court was to retain jurisdiction to enforce the agreement, how the case was to be dismissed, whether there was to be additional documentation beyond the agreement itself,

---

[1] Although the agreement contained a confidentiality provision to which Mr. Foster agreed, his Motion has ignored that provision and has disclosed the amount of payment. The Bank has not made an issue of this and thus, there is no need to file the exhibits to this opinion under seal. Indeed, it would be inappropriate to do so. *See Citizens First National Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir. 1999)(Posner, J.).

whether the agreement was to be filed in court, the effective date of the settlement (i.e., whether it was a binding settlement today or was not to be binding until a further formal agreement was executed), the authority of the representatives to enter into the agreement, whether the parties consented to Magistrate Judge jurisdiction, whether there was to be an admission of liability, and other terms to be filled in by the parties. (*See* Exhibit B).

Pursuant to ¶ F(2) of the agreement, the parties agreed that the settlement terms were to be further incorporated in an additional typewritten agreement to be prepared by the defendant. However, although the agreement contained a provision giving the Bank and Mr. Foster the option to condition a "binding" settlement agreement upon the execution of a further agreement, they chose to have the January 8th agreement constitute "[a] binding agreement today." Exhibit A, ¶ G(1).

Paragraph J of the agreement provided that the defendant was to remove negative credit information on the plaintiff's credit report. Contrary to the contention in the Motion, there was no time frame specified for compliance, although other provisions of the agreement had explicit temporal requirements. *See e.g.*, Exhibit A, ¶¶ A.2; E.1.[2] The district court was to maintain jurisdiction until Mr. Foster received the specified payment, at which time he was obligated "promptly" to dismiss the case with prejudice. *See* Exhibit A, ¶ E.1.

After execution of the January 8th agreement – whose purpose was to avoid the problems of fallible memory and to comply with the Seventh Circuit's caution that the results of successful settlement conferences should be memorialized, *Lynch, Inc. v. SamataMason, Inc.*, 279 F.3d 487, 490-491 (7th Cir. 2002)(Posner, J.); *cf. Wilson v. Wilson*, 46 F.3d 660, 664-665 (7th Cir. 1995) – counsel

---

[2] Not only did the written agreement not contain that term, the Bank never agreed to such a term.

for the Bank prepared the document that was envisioned by ¶ F(2) of the January 8th agreement. It was submitted to Mr. Foster's counsel on January 22, 2007. A revised draft incorporating plaintiff's counsel's comments was prepared on January 29th.

Consistent with the terms agreed upon in the January 8th written agreement, the Bank's document did not include any requirement that the deletion of any negative credit information must occur within 14 days. *See* Exhibit B. Rather, it provided that "NCB shall demand of Experian, Equifax and Transcript Union that the trade line with respect to the Note be deleted from Foster's credit reports. In the event that any of Experian, Equifax or Transcript Union fail to promptly honor such demand, NCB shall reasonably cooperate with Foster to make additional demands that the trade line be deleted." *See* Exhibit B, ¶9.

Although he was "agreeable to the language" of Exhibit B, Mr. Foster did not sign the document, but instead requested on February 1st that a "test" be done to determine whether the negative credit information could actually be deleted. *See* Exhibit C (exchange of emails between counsel for Mr. Foster and counsel for National City Bank). Exhibit B, like Exhibit A, did not contain a 14-day time provision, and Mr. Foster's agreement to the language is simply further evidence that the Bank and he never agreed to such a provision.[3]

On February 7, 2007, National City Bank requested that the credit reporting agencies delete any negative credit information regarding the loan that is the subject of this case. Experian and

---

[3] Even if the January 8th agreement was not a settlement agreement, Mr. Foster's acquiescence in the terms of Exhibit B is sufficient to constitute a binding settlement agreement. *See Seymour v. Hug*, 413 F.Supp.2d 910, 916-918 (N.D.Ill. 2005), *appeal dismissed*, _F.3d_, 2007 WL 1287513 (7th Cir. May 3, 2007).

3

Equifax promptly did so. After additional demands by National City Bank, Transcript Union deleted the negative credit information as well.

This, however, was not enough for Mr. Foster. On May 30th, he filed with Judge Zagel a one-page, two-paragraph "Motion to Enforce Settlement Agreement." It conceded that a settlement agreement had been reached between the parties at the settlement conference on January 8th, but contended that the agreement was "oral," and that the Bank had breached a term of the agreement requiring the Bank to cause to be removed any negative credit information in credit bureaus within 14 days. The Motion, which sought unspecified damages, was unsupported by affidavit or any documentary proof.[4] It carefully put out of view the existence of the written settlement agreement executed by Mr. Foster and the Bank on January 8th. Judge Zagel has sent the matter here.[5]

## DISCUSSION

At the core of the Motion is the claim that there was an "oral" agreement that required the Bank to have accomplished the task of deletion of the negative credit information from the third party credit agencies within 14 days of the January 8th settlement conference. Despite the Seventh Circuit's oft-repeated warning that "[t]he ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is... pointless," *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987), the Motion delusively proceeds on the premise that there

---

[4] At the hearing on the motion on June 4th, counsel for Mr. Foster said that Mr. Foster was contending that he had suffered $25,000 in damages.

[5] Since the case is still pending before Judge Zagel, the jurisdictional problems which can accompany dismissals with prejudice with a retention of jurisdiction to enforce a settlement agreement are not present here. *Lynch*, 279 F.3d at 489; *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995).

4

is no written agreement in play in this case. Yet, the January 8th written agreement is outcome-determinative.

Since most cases in the federal system are settled rather than tried, *United States v. Dawson*, 425 F.3d 389, 393 (7th Cir. 2005), the importance of settlement agreements cannot be overstated.[6] Not surprisingly, there is a general policy favoring enforcement of settlement agreements. *Ford Motor Co. v. Mustangs Unlimited, Inc.*, _F.3d_, 2007 WL 1501142 at *4 (6th Cir. 2007); *Foreman v. Mt. Sinai Medical Center*, 128 F.R.D. 591, 596 (S.D.N.Y. 1989). *Cf. Merek v. Chesny*, 473 U.S. 1, 5 (1985)(purpose of Rule 68 is to encourage settlement and avoid litigation). It is against this backdrop that Mr. Foster's motion is to be decided.

Apart from the Motion's assertion that the parties had *orally* agreed that the negative credit information would disappear within 14 days, there is no support for the contention. Mr. Foster has not even attached his own declaration to the Motion.[7] On this score alone, the Motion fails, for uncorroborated statements in motions and briefs do not count. *See IFC Credit Corp v. Aliano Brothers General Contractors, Inc.*,437 F.3d 606, 610-611 (7th Cir. 2006); *United States ex rel. Feingold v. AdminaStar Federal, Inc.*, 324 F.3d 492, 494, 497 (7th Cir. 2003); *Car Carriers Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). *Cf. In re: Payne*, 431 F.3d 1055, 1060 (7th Cir. 2005) (Posner, J.)(Payne's "lawyer's unsubstantiated assertion at oral argument doesn't count.").

---

[6] The ABA Section of Litigation recently undertook a major project to answer the question why trials in the United States are an endangered species. *See e.g.,* Patricia Lee Refo, *The Vanishing Trial*, 30 LITIGATION 2 (Winter 2004). Less than 2% of all dispositions of cases in recent years are the result of trials. The number continues to decline. *See* Mark Galanter, *The Vanishing Trial: An Examination of Trials and Related Matters in Federal and State Courts*, (ABA Symposium San Francisco, CA Dec. 12-14, 2003).

[7] Plaintiff's counsel advised me at the hearing on June 9th that he informed Mr. Foster of the hearing and requested that plaintiff attend. Mr. Foster neither appeared at the hearing nor called to explain his absence.

The motion also fails on the merits. A settlement agreement is a contract, and thus its construction and enforcement are governed by basic contract principles. *Wilson v. Wilson*, 46 F.3d at 666; *Laserage Tech. Corp. v. Laserage Laboratories Inc.*, 972 F.2d 799, 802 (7th Cir.1992); *McCall-Bey v. Franzen*, 777 F.2d 1178, 1186 (7th Cir.1985). Under basic contract principles, "'the primary object in construing a contract is to give effect to the intention of the parties involved.'" *In re Doyle*, 144 Ill.2d 451, 468, 581 N.E.2d 669 (1991). An agreement is binding if the parties agree on all material terms. *Abbott Laboratories v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir.1999); *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill.2d 306, 313-314, 515 N.E.2d 61 (1987). Whether the parties came to agreement is determined not by their subjective intent, but by what they expressed to each other in their writings. *Abbott*, 164 F.3d at 387. Thus, the parties decide for themselves whether the results of preliminary negotiations bind them, but they do so through their words. *Id.* at 388; *see also Empro Mfg. Co. v. Ball-Co Mfg., Inc.*, 870 F.2d 423, 425 (7th Cir.1989)( citing *Chicago Inv. Corp. v. Dolins*, 107 Ill.2d 120, 481 N.E.2d 712 (1985)).

Even in the context of ongoing negotiations, Illinois courts have not been shy about enforcing preliminary or incomplete agreements. *Dawson v. General Motors Corp.*, 977 F.2d 369, 374 (7th Cir.1992). Phrased differently, a contract is enforceable even though some terms may be missing or left to be agreed upon by the parties. *Academy Chicago Publishers v. Cheever*, 144 Ill.2d 24, 30, 578 N.E.2d 981 (1991); *see also Johnson v. Jung*, Nos. 02 C 5221, 04 C 6158, 2005 WL 1126897, at *3 (N.D.Ill. May 4, 2005); *Rose v. Mavrakis*, 343 Ill.App.3d 1086, 1090-91, 799 N.E.2d 469 (2003). Unless the parties expressly condition their agreement on the signing of a formal document, even informal writings manifesting each party's intent to be bound by the material terms proposed

constitute a binding settlement agreement. *Abbott,* 164 F.3d at 388-89; *see also Empro,* 870 F.2d at 425; *Seymour v. Hug,* 413 F.Supp.2d at 916-918.

Measured against these standards, the January 8th written document is a binding settlement agreement that articulates the parties' respective rights and obligations. While they opted to have an additional document prepared, they were explicit in agreeing that the January 8th agreement was immediately binding. Exhibit A, ¶G. It was not intended to and did not incorporate a provision that obligated the Bank within a 14-day period to cause credit bureaus to delete negative credit information about Mr. Foster.[8]

In general, "issues of interpretation in contract cases should be resolved on the basis of the contract's language in order to minimize the costs and uncertainties of enforcing contracts." Only if the language is unclear "is there any reason to burden the parties with a trial on the meaning of the contract. *In re Comdisco,* 434 F.3d 963 (7th Cir. 2006)(Posner, J.). *See also Blue Cross and Blue Shield Assn.,* 467 F.3d at 640("In the long run, everyone gains from predictability (and from rules that reduce the expense of litigating about such transactions)."). In the instant case, the language of the January 8th settlement agreement could not be clearer. All the Bank was obligated to do was to cause the offending information to be removed from credit bureau files. The Bank has done that and has done so expeditiously.

---

[8] There is a presumption against construing a contract to contain a provision that could have been included but was not. *Prime Group, Inc. v. Northern Trust Co.,* 215 Ill.App.3d 1065, 576 N.E.2d 841, 844 (1st Dist. 1990).

7

## CONCLUSION

Mr. Foster knowingly and voluntarily signed a written agreement that settled his case and that contained all the material terms of the parties' agreement. He was represented by the most conscientious of counsel, and he did not act under duress or from mistake. The shortness of life and the scarcity of judicial resources preclude countenancing an approach to settlement agreements that makes them test runs, subject to revision whenever a party decides the agreement does not spell things out quite the way he would have liked or that he yielded too much. *See generally Taylor v. Gordon Flesch Co.*, 793 F.2d 858, 863 (7th Cir. 1986). *Cf. Blue Cross and Blue Shield Ass'n v. American Express Co.*, 467 F.3d 634, 640 (7th Cir. 2006)(Easterbrook, J.).

In sum, Mr. Foster's Motion is baseless. The only breach of the settlement agreement is Mr. Foster's public disclosure of certain of its terms in his Motion and his refusal to accept the sum of money he bargained for. The Motion to Enforce Settlement Agreement [45] is denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 6/6/07

8

# SETTLEMENT CHECKLIST/TERM SHEET

CASE NAME: _Foster_ vs. _National City Bank_

CASE NO. _05 CV 6992_   DATE: _January 8, ~~2006~~ 2007_

A. PAYMENT OF MONEY TO: _Plaintiff_ FROM: _Defendants_

   1. Total amount to be paid: $ _265,000.00_

   2. When: _Within 30 days_

   3. Payment terms: _Check_

   4. Does payment include attorney's fees? (Yes) or No

   5. Any third party liens to be paid from proceeds? Yes or (No)

      a. If yes, to whom: _____

   6. Tax Treatment: _to be determined by Plaintiff_

   7. Other payment terms: _N.A._

B. RELEASE OR COVENANT NOT TO SUE (Circle One):

   1. a. One Way From Plaintiff(s) to Defendant(s), or
      (b.) Mutual Release

   2. Scope of Release:

      (a.) General: _from P. to D._

         1) All claims raised in the litigation, or
         (2) All claims, whether or not raised in the litigation.

      b. Limited: _from Dft to Plaintiff. All claims raised in litigation_

   3. Scope of Covenant Not To Sue: _NA_

   4. Exceptions to release or covenant not to sue: _NA_

EXHIBIT A

5. Other Release or Covenant Not to Sue Terms: _N A_

C. CONFIDENTIALITY: (Yes) or No   MUTUAL: (Yes) or No

    1. What can be said about litigation?

        (a.) Dispute amicably resolved, or
        b. Nothing, or
        c. Other: _____

    2. Exceptions to confidentiality?

        (a.) Attorneys
        (b.) Tax advisors
        (c.) Immediate family
        (d.) As otherwise required by law
        e. Other: _Regulators and other agencies of government_

    3. Liquidated damages in event of breach: Yes or (No)

    4. Amount: (Not too large to avoid being a penalty) $ _N A_

D. ENFORCEMENT OF SETTLEMENT AGREEMENT BY COURT

    1. Do parties desire court to retain jurisdiction to enforce settlement agreement? Yes or (No)

    2. If yes, parties agree that dismissal order will (should include at least one):

        a. Provide for retention of jurisdiction by the court to enforce, and/or
        b. Require compliance with the settlement agreement, and/or
        c. Incorporate terms of settlement agreement into dismissal order.

E. DISPOSITION OF LITIGATION: _→ promptly upon payment of the agreed upon sum._

    1. Dismissal of litigation: (a) with prejudice or b) without prejudice.

    2. Dismissal without prejudice with leave to reinstate litigation on or before _____
       for the purpose of: a) proceeding with the litigation or b) enforcing the settlement. In the event a motion to reinstate is not filed on or before above date, dismissal becomes with prejudice.

    3. Other terms regarding disposition of litigation _N A_

F. CONFIRMING AND DOCUMENTING SETTLEMENT:

1. Do parties wish to place settlement on the record? Yes or (No)

2. Settlement terms to be incorporated in a typed written agreement? (Yes) or No

   a. Typed agreement to be prepared by _Defendant_

   and sent to other parties on or before _as soon as possible_

   b. Other parties to respond with changes, if any, by _as soon as possible_

3. Typed settlement agreement to be executed on or before: _as soon as possible_

4. Will settlement agreement be filed in court? Yes or (No)

5. Other terms regarding documenting settlement: _None_

G. **EFFECTIVE DATE:**

(1.) X binding agreement today; or

2. No binding agreement until the typed settlement agreement is signed.

H. DO PARTY REPRESENTATIVES HAVE FULL AUTHORITY TO ENTER INTO SETTLEMENT AGREEMENT? (Yes) or No

Identify party representatives and their titles: _X_

I. DO PARTIES CONSENT TO MAGISTRATE JUDGE JURISDICTION? Yes or No

J. **OTHER SETTLEMENT TERMS:**

(1.) No admission of liability. 2. _Remove negative credit information on credit reports to the parties' satisfaction; (3) Release of mortgage by defendant; (4) all costs and fees to be borne by the parties respectively;_

K. EMPLOYMENT CASES: 1. Ability to reapply: Yes or No; 2. Type of reference: _NA_

L.   NEXT COURT DATE TO REPORT ON SETTLEMENT: _____

AGREED TO:                                    AGREED TO:

_John R Winkler_____                _____
V.P. Senior Corporate Counsel                 John Cogdon
National City Bank                            Plaintiff's attorney

_____
Counsel for National
City Bank

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between (1) National City Bank ("NCB") and (2) Jeffrey Foster ("Foster").

WHEREAS, Foster commenced an action against NCB styled <u>Jeff Foster v. National City Bank</u>, No. 05 C 6992 (N.D. Ill.) (the "Suit");

WHEREAS, in the Suit, Foster asserts that NCB violated the federal Fair Credit Reporting Act as well as Illinois law;

WHEREAS, NCB does not admit liability to Foster, specifically asserts that it is not so responsible or liable and, in addition, filed a Counterclaim in the Suit against Foster, and has agreed to this settlement solely to avoid the costs of litigation.

NOW, THEREFORE, in consideration of the premises and covenants herein, NCB and Foster agree as follows:

1. The recitals set forth above are incorporated into this Agreement.

2. Within 14 days of the execution of this Agreement, NCB agrees to pay Foster two hundred and sixty-five thousand dollars ($265,000) in full settlement of all claims for damages, attorneys' fees and other relief raised in the Suit. The payment shall be made by check payable jointly to Foster and Gomberg, Sharfman, Gold & Ostler, P.C.

3. Promptly after Foster's receipt of the payment referred to in paragraph 2 of this Agreement, Foster shall dismiss with prejudice all claims raised in the Suit, and NCB shall dismiss with prejudice all counterclaims raised in the Suit, with all parties to bear their own costs and fees.

4. Foster, on behalf of himself and his heirs, successors and assigns, and all business entities in which he owns a controlling interest, agrees, promises, releases and

forever discharges NCB and its successors, assigns, parent corporations (including but not limited to National City Corporation), affiliated corporations (including but not limited to National City Mortgage) and their respective current employees, former employees, officers, directors, partners, attorneys, insurers and representatives (collectively the "Released Parties"), from liability from any and all claims, controversies, actions, causes of actions, demands, torts, damages, costs, attorneys' fees, moneys due on account, obligations, judgments or liabilities of any kind whatsoever in law or equity, arising out of agreement or imposed by statute, common law or otherwise, from the beginning of time to the date this Agreement is signed, whether or not known now, anticipated, unanticipated, suspected or claimed, fixed or contingent, whether yet accrued or not and whether damage has resulted from such or not. Foster represents that he has not assigned any claims that he now has, or ever had, against the Released Parties to any third parties.

5. NCB, on its own behalf and on behalf its successors and assigns, hereby releases Foster from any claims relating to the allegations of the Suit and to any Counterclaims filed by NCB in the Suit. NCB represents that it has not assigned any claims that it now has, or ever had, against Foster relating to the allegations of the Suit or to any Counterclaims raised in the Suit to any third parties. This release in this paragraph is intended to be a limited release and does not affect claims that NCB may have against Foster that are unrelated to the allegations of the Suit or to the allegations of NCB's Counterclaims in the Suit.

6. With the exception of any required disclosures to the Court which has jurisdiction over the Suit, Foster and NCB agree that neither they, their attorneys nor any other persons within their control will disclose to any person or entity, other than their

-2-

attorneys, accountants, professionals, regulators and immediate family members, or for any other necessary and legitimate business purpose or as otherwise required by law, the fact of the parties' settlement or any of the terms or conditions of this Agreement. The parties may otherwise disclose only that the matter was settled pursuant to a confidential settlement agreement.

7. The tax treatment of the payment to be made by NCB to Foster pursuant to paragraph 2 of this Agreement shall be determined solely by Foster and his professionals. NCB expresses no opinion, and makes no representations, as to the proper tax treatment by Foster of that payment.

8. NCB shall provide a release of the Mortgage dated October 30, 2002 and attached hereto as Exhibit A (the "Mortgage"), which secures Foster's payment of the Equity Reserve Agreement – Multi State dated October 30, 2002 and attached hereto as Exhibit B (the "Note").

9. NCB shall demand of Experian, Equifax and Trans Union that the trade line with respect to the Note be deleted from Foster's credit reports. In the event that any of Experian, Equifax or Trans Union fail to promptly honor such demand, NCB shall reasonably cooperate with Foster to make additional demands that the trade line be deleted.

10. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but which together shall constitute a single agreement. This Agreement may be executed by facsimile signature, which shall serve as an original, with the original signature to be thereafter delivered.

11. This Agreement shall, in all respects, be governed by the laws of the State of Illinois.

12. Each party represents that such party has been advised to seek consultation with an attorney before signing this Agreement, that such party has had the benefit of independent counsel of its own choosing and that such party has carefully read this Agreement, has reviewed it with counsel and understands each provision thereof.

13. This Agreement constitutes the entire agreement of the parties with respect to settlement of the Suit. No promise or obligation not set forth herein shall be valid or binding. Each party expressly represents to the others that no promises, representations, inducements, or agreements of any sort whatsoever, not reflected herein, have been made by any party to this Agreement or their respective attorneys.

Dated: _____     _____
                                  JEFFREY FOSTER

Dated: _Feb. 7, 2007_             NATIONAL CITY BANK
                                  By: _[signature]_
                                  Its: _Senior Vice President_

## Levy, Steven

**From:** Jack Lydon [lydonj@gsgolaw.com]
**Sent:** Friday, February 02, 2007 4:43 PM
**To:** Levy, Steven
**Cc:** Organ, Matthew K.
**Subject:** RE: Foster v. NCB

Steve:

I am not sure if Jeff is willing to sign or not. Jeff told me that he agrees to the language but he asked me if I would ask you if you would have your client test the removal of the tradeline. Matt told me yesterday that he spoke to the NCB person that would actually delete the entry. Perhaps that person can attempt to delete the tradeline and see what happens. NCB could always put it back on if Jeff refuses to sign the release or dismiss the case. Let me know. I apologize for the constantly moving target.

Jack

---

**From:** Levy, Steven [mailto:Steven.Levy@goldbergkohn.com]
**Sent:** Thursday, February 01, 2007 6:51 PM
**To:** Jack Lydon
**Cc:** Organ, Matthew K.
**Subject:** RE: Foster v. NCB

Jack, if you're saying that the agreement is acceptable, and Jeff is going to sign it, we'll go ahead and get the process started in the morning even before we get the signed agreement, which I would expect we'll receive very shortly. Is that where we're at?

Steven Levy | **GOLDBERG KOHN** | 55 East Monroe, Suite 3700, Chicago, Illinois 60603 | direct 312.201.3965 | direct fax 312.863.7465 | steven.levy@goldbergkohn.com | www.goldbergkohn.com

This e-mail is subject to Goldberg Kohn's terms and conditions regarding e-mail, which are available on our web site or by clicking here.

IRS Circular 230 Disclosure: Unless we have specifically stated to the contrary in writing, any discussion of federal tax issues or submissions in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the United States federal tax laws or (2) promoting, marketing, or recommending to anyone any transaction or matter addressed herein.

---

**From:** Jack Lydon [mailto:lydonj@gsgolaw.com]
**Sent:** Thursday, February 01, 2007 6:45 PM
**To:** Organ, Matthew K.
**Cc:** Levy, Steven
**Subject:** Foster v. NCB

Matt:

Jeff is agreeable to the language but asks if you can ask your client to delete the tradeline so we can test it and see if it works. Let me know.

Jack

EXHIBIT C

6/5/2007